No. 20-35507

───────────────────────────────────────────

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

───────────────────────────────────────────

CEDAR PARK ASSEMBLY OF GOD OF KIRKLAND, WASHINGTON,

*Plaintiff-Appellant*,

v.

MYRON "MIKE" KREIDLER, in his official capacity as Insurance
Commissioner for the State of Washington; JAY INSLEE, in his official
capacity as Governor of the State of Washington,

*Defendants-Appellees*.

───────────────────────────────────────────

On Appeal from the United States District Court
for the Western District of Washington
Civil Case No. 3:19-cv-05181-BHS
Hon. Benjamin H. Settle

───────────────────────────────────────────

**REPLY SUPPORTING PLAINTIFF-APPELLANT'S
MOTION TO SUPPLEMENT THE RECORD**

───────────────────────────────────────────

DAVID A. CORTMAN
RORY T. GRAY
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd, NE
Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org
rgray@ADFlegal.org

KRISTEN K. WAGGONER
JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM
440 First Street, NW
Suite 600
Washington, DC 20001
(202) 393-8690
kwaggoner@ADFlegal.org
jbursch@ADFlegal.org

*Counsel for Plaintiff-Appellant*

Kevin H. Theriot
Elissa M. Graves
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
ktheriot@ADFlegal.org
egraves@ADFlegal.org

*Counsel for Plaintiff-Appellant*

In their response, Washington officials make three, notable concessions: (1) this Court has authority to supplement the record, Resp. 5–6; (2) *Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988), instructs litigants to "take pains to supplement the record in any manner necessary to enable [federal courts] to address with as much precision as possible any question of standing that may be raised;" and (3) no Providence group health plans are available to Cedar Park, Resp. 8.

Washington officials' remaining arguments are mere distraction. First, they say that no extraordinary circumstances justify supplementing the record with Ms. Hansen's declaration. Resp. 7. But the need to supplement resulted from the district court reaching outside the complaint to consider extrinsic evidence—at Washington officials' invitation—under Rule 12(b)(1), and then getting those facts wrong.

Second, the officials maintain that Ms. Hansen's declaration, which proves the district court's key factual assumption wrong, is irrelevant or futile. Resp. 7–8. But the Hansen Declaration proves the factual basis for the district court's ruling wrong. Far from being irrelevant, the Declaration shows why the district court's dismissal of this case was erroneous and should be reversed.

Third, the officials contend Cedar Park mispresented the district court's rationale for dismissing the complaint. Resp. 8. Not so. Cedar Park explained the court's decision by quoting from its own decision.

Finally, the officials claim that the insertion of abortion coverage into Cedar Park's health plan is not due to Senate Bill 6219. Resp. 8. But this position is legally wrong, factually wrong, and irrelevant to whether the Court should grant Cedar Park's motion to supplement the record to clarify standing.

In sum, none of the officials' contentions have merit. Because the facts contained in Ms. Hansen's declaration are "not subject to reasonable dispute," Fed. R. Evid. 201(b), this Court should follow its precedent, grant Cedar Park's motion, and supplement the record for purposes of determining jurisdiction.

## I.    Extraordinary circumstances justify supplementing the record to prove Cedar Park's standing.

Washington officials' feign as if Cedar Park's motion to supplement the record is unprecedented. Resp. 6. They are wrong. This Court routinely supplements the record for the limited purpose of determining its jurisdiction. Mot. 2–3 (citing *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1141 n.3 (9th Cir. 2016); *Johnson v. Rancho Santiago*

2

*Cmty. Coll. Dist.*, 623 F.3d 1011 1020 n.3 (9th Cir. 2010); *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003)).

None of these cases suggest that mootness is the *only* jurisdictional issue that permits supplementation, as Washington officials suggest. Resp. 6. In fact, this Court has previously supplemented the record to clarify a plaintiff's injury in fact. *E.g.*, *Hawaii v. Trump*, 859 F.3d 741, 764–65 (9th Cir. 2017) (per curiam), *overruled on other grounds by Trump v. Hawaii*, 138 S. Ct. 377 (2017).

That is the proper course because "[d]etermining standing is essentially a legal inquiry but may involve underlying factual findings." *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1527–28 (9th Cir. 1997). *Pennell* instructs litigants to "supplement the record *in any manner necessary*" to allow this Court to rule with "as much precision as possible" on a "question of standing." 485 U.S. at 8 (emphasis added). The Supreme Court recognized the importance of getting the facts right. And Cedar Park's motion to supplement the record is tailored to accomplish that, and no more.

3

Significantly, Cedar Park's need to supplement the record is not the church's fault. It resulted from the district court reaching outside the complaint to consider extrinsic evidence (at Washington officials' invitation) under Rule 12(b)(1) and then getting those facts wrong. Based on the district court's misreading of extrinsic facts, it held that Cedar Park lacked standing and dismissed the complaint. *Cedar Park Assembly of God of Kirkland v. Kreidler*, No. C19-5181 BHS, 2020 WL 2199423, at *4–*6 (W.D. Wash. May 6, 2020). Those are "extraordinary circumstances" in and of themselves. Resp. 7.

"Jurisdictional dismissals in cases premised on federal-question jurisdiction are *exceptional*, and must satisfy the requirements specified in *Bell v. Hood*, 327 U.S. 678 (1946)." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (emphasis added). Ms. Hansen's declaration proves that no abortion-excluding Providence group health plan is available to Cedar Park. That fact shows that Cedar Park's First and Fourteenth Amendment claims are not (1) "immaterial" or (2) "wholly insubstantial and frivolous." *Id.* (quoting *Bell*, 327 U.S. at 682–83). The church's injury is real and establishes standing.

Washington officials fault Cedar Park for not providing the Hansen Declaration sooner. Resp. 7. But that criticism is unfair. Washington admits that it "never alleged that the OIC approved plans consistent with Cedar Park's religious beliefs in King and Snohomish Counties." Resp. 8. Yet that is how the district court unpredictably read the Crisalli Declaration and its attached press release. *Cedar Park*, 2020 WL 2199423, at *5 (ruling that Kaiser Permanente "does not offer a product that meets Cedar Park's requirements, while *Providence does offer such a product*" and taking Cedar Park to task for not "*obtaining a comparable plan from Providence*") (emphasis added).

Cedar Park had no reason to anticipate the district court's misreading of the Crisalli Declaration or to take steps to correct the district court's factual misconception until it ruled. So Washington officials' claim that Cedar Park should have "produced [the Hansen] declaration in response to the second motion to dismiss" or "the first motion to dismiss" is unwarranted. Resp. 7. Nothing requires litigants to foretell and preemptively counteract a court's unforeseeable factual errors.

## II.    Far from being irrelevant, the Hansen Declaration proves the factual basis for the district court's ruling wrong.

Washington officials declare Ms. Hansen's declaration irrelevant or futile by ignoring the vast majority of what the district court said. Their suggestion that the district court did not ground its ruling on the assumption that "Cedar Park was in fact able to purchase a plan from Providence" is unsupportable. Resp. 8. The district court expressly said that Cedar Park could leave its current group health plan and "obtain[] a comparable plan from Providence" that excluded abortion coverage. *Cedar Park*, 2020 WL 2199423, at \*5.

In fact, the district court answered Cedar Park's argument "that it was impossible *to do business with Providence*" when its plan renewed by faulting the church for not proving that it faced a "penalty" for deciding "to switch providers" at some later point. *Id.* (emphasis added). Ms. Hansen's declaration shows that Cedar Park is not eligible to purchase an abortion-excluding, Providence group health plan. In so doing, it proves the district court's key factual assumption wrong.

Washington officials never dispute the truth of Ms. Hansen's declaration. Resp. 8. Nor do they contend that granting Cedar Park's motion to supplement would prejudice them. Their reasons for opposing

6

the church's motion is unclear: if Ms. Hansen's declaration is "futile,"
then including it in the record does no harm. Resp. 8.

## III.   What is truly out of place is Washington officials' conflation of jurisdiction with the merits.

What is actually out of place is the Washington officials' enduring
claim that Cedar Park must prove they "would reject an insurance plan
consistent with [its] religious beliefs" to have standing. Resp. 8. This
Court previously rejected a similar argument in *Skyline Wesleyan
Church v. California Department of Managed Health Care*, __ F.3d __,
No. 18-55451, 2020 WL 4191412 (9th Cir. July 21, 2020). And just like
Skyline Wesleyan had standing to sue, Cedar Park has standing here.

The two cases are factually indistinguishable. Before Senate Bill
6219 went into effect, Kaiser Permanente offered Cedar Park a group
health plan that excluded abortion coverage. After Senate Bill 6219
came into force, Kaiser Permanente denied Cedar Park a plan that
comported with its religious beliefs and inserted abortion coverage into
its plan. *Compare with id.* at *7 (before the state demanded that
insurance providers insert abortion coverage "Skyline had insurance

that excluded" it, yet "[a]fter the Letters were sent, Skyline did not have that coverage, and it . . . its new coverage violated its religious beliefs").

The inclusion of abortion coverage into Cedar Park's health plan in violation of the church's religious beliefs was Senate Bill 6219's "'predictable effect . . . on the decisions of third parties,'" *i.e.*, nonreligious insurance providers like Kaiser Permanente. *Id.* at *9 (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019)). Washington officials cannot be surprised that a statute mandating abortion coverage resulted in abortion coverage in the church's health plan. Senate Bill 6219 unquestionably caused the church's "injury in fact." *Id.* at *7. Any contrary argument is meritless and conflicts with this Court's decision in *Skyline*.

Proving the point, if a court enjoins Senate Bill 6219's application to houses of worship like Cedar Park, Kaiser Permanente has pledged to exclude abortion coverage from the church's health plan at the earliest opportunity. Supp. V. Compl. for Inj. and Declaratory Relief at 3, *Cedar Park Assembly of God of Kirkland, Washington v. Kreidler*, No. 3:19-cv-05181 (W.D. Wash. Oct. 3, 2019), ECF No. 52-1; *compare with Skyline*, 2020 WL 4191412, at *10. Senate Bill 6219 is the only

8

roadblock to Cedar Park obtaining the group health insurance policy it wants.

Nothing requires Cedar Park to "take[] further steps before seeking redress in court for its injury." *Skyline*, 2020 WL 4191412, at *7. The church "lost something it previously had" and wants back, *i.e.*, a group health plan that comports with its religious beliefs. That injury gives Cedar Park standing to challenge Senate Bill 6219.

Washington officials "go[] astray" by hinging their "jurisdictional" arguments on the "merits" of Cedar Park's complaint. *Careau Grp. v. United Farm Workers of Am.*, 940 F.2d 1291, 1294 (9th Cir. 1991). The question of whether there is *any possibility* that Cedar Park may obtain a group health plan that agrees with its religious beliefs could inform the merits of the church's constitutional claims. Resp. 8. But it has no bearing on Cedar Park's standing. Senate Bill 6219 "already caused injury" by resulting in the inclusion of abortion coverage into Cedar Park's health plan. *Skyline*, 2020 WL 4191312, at *12. That injury gives Cedar Park the right to challenge Senate Bill 6219. *Id.* at *10.

9

# CONCLUSION

For these reasons and those outlined in Cedar Park's motion, the church respectfully requests this Court to grant its motion to supplement the record to include the Hansen Declaration.

Date:  August 12, 2020

Respectfully submitted,

*/s/ John J. Bursch*

DAVID A. CORTMAN
RORY T. GRAY
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd, NE
Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org
rgray@ADFlegal.org

KRISTEN K. WAGGONER
JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM
440 First Street, NW
Suite 600
Washington, DC 20001
(202) 393-8690
kwaggoner@ADFlegal.org
jbursch@ADFlegal.org

KEVIN H. THERIOT
ELISSA M. GRAVES
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
ktheriot@ADFlegal.org
egraves@ADFlegal.org

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This reply complies with the requirements of Fed. R. App. P. 27(d) and 9th Circuit Rule 27-1(1)(d) because it does not exceed 10 pages.

This reply also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this reply has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ John J. Bursch*
John J. Bursch

Dated: August 12, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Reply Supporting Motion to Supplement the Record with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate CM/ECF system on August 12, 2020. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Appellate CM/ECF system.

*/s/ John J. Bursch*
John J. Bursch
*Attorney for Plaintiff-Appellant*